FILED

10 JUN 29 PM 3:54

CLERK U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CHARTIS SPECIALTY INSURANCE COMPANY f/k/a AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, an Illinois Corporation, and LEXINGTON INSURANCE COMPANY, a Delaware corporation,**

**Plaintiffs,**

No. 8:10-CV-1465-T-23 EAJ

**v.**

**ROBERT C. PATE, in his capacity as Trustee for the Chinese Drywall Trust, WCI COMMUNITIES, INC., a Delaware corporation, and WCI COMMUNITIES, L.L.C., a Delaware limited liability company,**

**Defendants.**

**COMPLAINT FOR DECLARATORY JUDGMENT**

Chartis Specialty Insurance Company ("Chartis") f/k/a American International Specialty Lines Insurance Company and Lexington Insurance Company ("Lexington") sue Robert C. Pate, in his capacity as the Trustee for the Chinese Drywall Trust (the "Trust"), WCI Communities, Inc. ("WCI Inc."), WCI Communities, L.L.C. ("WCI LLC") (WCI Inc. and WCI LLC collectively, "WCI") and allege as follows:

**INTRODUCTION**

1. Chartis and Lexington seek a declaration that they owe no duty to defend or indemnify the Trustee or Trust under liability insurance policies issued by each of them with respect to claims arising from allegedly defective drywall installed in residential construction in Florida.

$350 - 1056043

2. There is an actual, present and bona fide controversy between the parties concerning the alleged obligations of Chartis and Lexington to defend and indemnify the Trustee or Trust with respect to the claims involving allegedly defective drywall.

**PARTIES**

3. Chartis is an Illinois corporation with its principal place of business in New York, New York.

4. Lexington is a Delaware corporation with its principal place of business in Boston, Massachusetts.

5. Upon information and belief, Robert C. Pate ("Pate") is a citizen of the State of Texas residing in Corpus Christi, Texas.

6. Upon information and belief, the Trust is a Delaware statutory trust under 12 Del. Code §§ 3801 – 3826.

7. Upon information and belief, WCI Inc., is a Delaware corporation with its principal place of business in Bonita Springs, Florida.

8. Upon information and belief, WCI LLC, is a Delaware limited liability company with its principal place of business in Bonita Springs, Florida.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction in this action under 28 U.S.C. §§ 2201 and 1332, as amended. This matter involves a dispute between citizens of different states and the value in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in this district pursuant to 28 U.S.C. §1391(a) and (c) because one or more of the defendants resides and conducts business in this district and a substantial part of the events giving rise to this claim occurred in this district.


HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 Sheridan Street, Suite 104, Cooper City, FL 33026, Tel. 954/624-8700 Fax 954/624-8064

11. Chartis is entitled to declaratory relief under 28 U.S.C. §§ 2201-2202 in accordance with Florida law.

12. Pate filed an action in the United States District Court for the Eastern District of Louisiana captioned *Pate v. American Int'l Specialty Lines Ins. Co., et al.*, No. 2:09-cv-07791, in which Chartis and Lexington are defendants and have moved to dismiss the amended complaint for improper venue. This Court, and not the United States District Court for the Eastern District of Louisiana, is the proper venue for resolution of this dispute. There is no connection between Louisiana and the interested parties or alleged injuries. The insurance policies involved in this matter were issued to a Florida developer insured that allegedly constructed houses that are now the subject of claims by owners or residents arising from allegedly defective drywall installed in those houses.

## GENERAL ALLEGATIONS

### The Chinese Drywall Trust

13. Upon information and belief, on August 4, 2008, predecessors in interest to WCI and various other affiliated entities (the "Debtors") filed for bankruptcy under Chapter 11 of the Bankruptcy Code. *In re WCI Communities, Inc., et al.*, No. 08-11643 (Bankr. D. Del.).

14. Upon information and belief, prior to and during the bankruptcy proceeding, individuals made claims and filed lawsuits against Debtors alleging that Debtors built their homes in Florida using allegedly defective drywall. This drywall allegedly emits gases containing sulfur compounds that cause adverse health effects and damage to property. Homeowners filed proofs of claim related to allegedly defective Chinese Drywall in the bankruptcy proceeding.



HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 Sheridan Street, Suite 104, Cooper City, FL 33026, Tel. 954/624-8700 Fax 954/624-8064

15. On July 16, 2009, Debtors filed a Second Amended Joint Chapter 11 Plan of Reorganization for WCI Communities, Inc., and Its Affiliated Debtors (the "Plan").

16. On August 26, 2009, the Bankruptcy Court issued an Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization for WCI Communities, Inc. and Its Affiliated Debtors (the "Order").

17. As provided by the Plan and Order, Debtors created the Trust under the Chinese Drywall Property Damage and Personal Injury Settlement Trust Agreement dated August 31, 2009 (the "Trust Agreement").

18. Under the Plan, Order and Trust Agreement, the Trust assumed Debtors' liability, if any, arising out of claims involving allegedly defective drywall installed in homes Debtors constructed in Florida.

19. Pate, as Trustee, seeks coverage under insurance policies issued to, or for the benefit, of Debtors for claims arising out of allegedly defective drywall installed in homes Debtors constructed in Florida.

20. Under the Plan and Order, various Debtors transferred certain assets to WCI LLC. Upon information and belief, the insurance policies at issue in this case may be among the assets transferred to WCI LLC, which is controlled by WCI Inc. These entities may have an interest in the insurance policies at issue to the extent that those policies were transferred to one or both of them. Neither WCI LLC nor WCI Inc., have sought coverage under the insurance polices at issue for defective drywall claims and they do not appear to be liable for any such claims based on the Plan and Order. Chartis and Lexington have named WCI LLC and WCI Inc. as defendants solely because they may have an interest in the policies at issue.


HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 Sheridan Street Suite 104, Cooper City, FL 33026, Tel 954/624-8700 Fax 954/624-8064

**The Claims Regarding Defective Drywall**

21. Pate alleges that in 2006 certain Debtors began to receive complaints of property damage and/or bodily injury arising from Chinese drywall installed in homes that Debtors sold in Florida, including areas such as Fort Lauderdale, Fort Meyers, and Bradenton.

22. Pate claims that Chinese drywall includes drywall manufactured in China and drywall manufactured domestically that contains recycled drywall from China.

23. Pate contends that homeowners have alleged that the drywall installed in the houses Debtors constructed has caused increased rates of corrosion of soft metals throughout the houses (such as air conditioning coils, refrigerator tubing, electrical wires and television connections), various health issues and tarnishing of silver and soft metals.

**Studies Regarding Defective Drywall**

24. Beginning in or about 2009, various Federal and State governmental agencies, as well as private testing firms, analyzed drywall and reported that certain drywall, including drywall manufactured in China, contains and emits sulfur-related chemical compounds that are associated with corrosion of metal, damage to other property and complaints of odors and adverse health effects.

25. In October 2009, the United States Consumer Product Safety Commission (CPSC) released several reports concerning testing upon Chinese and domestically-produced drywall. These reports conclude that the Chinese drywall contained higher concentrations of elemental sulfur compared to the domestic drywall. Further, the reports note that the Chinese drywall emitted higher levels of total volatile sulfur compounds than did the domestic drywall.



HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 Sheridan Street, Suite 104, Cooper City, FL 33026, Tel 954/624-8700 Fax 954/624-8064

26. On or about November 23, 2009, the CPSC released reports regarding additional drywall testing. The CPSC reported that in a fifty-one home study, hydrogen sulfide gas was detected in homes with defective drywall in concentrations that were statistically higher than in homes without such drywall. Further, examination of copper wiring in homes containing defective drywall exhibited corrosion.

**The Chartis Umbrella Policies**

27. Chartis issued to a predecessor in interest to WCI the Homebuilders Umbrella policy nos. 7412158, effective May 1, 2006, to May 1, 2007, 7412275, effective May 1, 2007, to May 1, 2008, and 4943750, effective May 1, 2008, to December 1, 2009 (collectively, the Chartis Umbrella Policies). A copy of each policy is attached as Exhibits A, B, and C respectively.

28. To the extent that the Trustee seeks coverage under the Chartis Umbrella Policies for defective drywall claims processed by the Trust, coverage under each policy may be available with respect to the claims only if the Trustee or the Trust is entitled to seek coverage, all conditions for coverage are satisfied, and coverage is not otherwise excluded.

29. Coverage is barred under the Chartis Umbrella Policies as provided in the Total Pollution Exclusion Endorsement for bodily injury and property damage, if any, associated with defective drywall, arising from the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants," as that term is defined in each such Chartis Umbrella policy.

30. Coverage may be available under each of the Chartis Umbrella Policies only to the extent that each applicable self-insured retention is properly exhausted.


HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 Sheridan Street, Suite 104, Cooper City, FL 33026, Tel. 954/624-8700 Fax 954/624-8064

31. Coverage is not available under each of the Chartis Umbrella Policies to the extent that a claimant seeks relief from an insured that does not constitute "damages" as that term is used in a policy. Equitable relief involving medical monitoring or economic losses associated with defective drywall do not constitute damages for which coverage is potentially available.

32. Coverage is barred under each of the Chartis Umbrella Policies to the extent that an insured has not suffered damages because of "bodily injury" or "property damage," as those terms are defined in the policy. The mere presence of defective drywall is not property damage and there is no coverage under the Chartis Umbrella Policies for any costs arising out of the process of repairing or replacing the drywall.

33. Coverage is barred under each of the Chartis Umbrella Policies to the extent that any bodily injury or property damage associated with defective drywall is not the result of an "occurrence," as that term is defined in each policy.

34. Coverage is limited under each of the Chartis Umbrella Policies to the extent that any bodily injury or property damage constitutes a single occurrence. Bodily injury or property damage, if any, associated with defective drywall, that is continuing or progressive over any length of time is one occurrence that occurs only when the bodily injury, property damage or both first commenced.

35. Coverage may be available under each of the Chartis Umbrella Policies only for damages because of bodily injury or property damage, if any, associated with defective drywall that occurs during the policy period or occurs after the policy period involving a house for which a deed or title was recorded in the name of the original third-party purchaser during the policy period.



HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 Sheridan Street, Suite 104, Cooper City, FL 33026, Tel. 954/624-8700 Fax 954/624-8064

36. Coverage is barred under each of the Chartis Umbrella Policies for bodily injury or property damage, if any, arising from defective drywall for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement, except as provided in each policy.

37. Coverage is barred under each of the Chartis Umbrella Policies for property damage to property arising from defective drywall, if any, that an insured owns, rents or occupies.

38. Coverage is barred under each of the Chartis Umbrella Policies for bodily injury or property damage, if any, associated with defective drywall, included in the "products-completed operations hazard," as defined in each policy, and involving homes where the deed or title was recorded in the name of a third-party before the policy incepted.

**Lexington Excess Policies**

39. Lexington issued to a predecessor in interest to WCI the Excess Liability policy nos. 0355453, effective May 1, 2006, to May 1, 2007, 1011060, effective May 1, 2007, to May 1, 2008, and 1053988, effective May 1, 2008, to December 1, 2009 (collectively, the Lexington Excess Policies). A copy of each policy is attached as Exhibits D, E, and F.

40. To the extent that the Trustee seeks coverage under the Lexington Excess Policies for defective drywall claims processed by the Trust, coverage under each policy may be available with respect to the claims only if the Trustee or the Trust is entitled to seek coverage, all conditions for coverage are satisfied, and coverage is not otherwise excluded.



HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 Sheridan Street, Suite 104, Cooper City, FL 33026, Tel. 954/624-8700 Fax 954/624-8064

41. Each of the Lexington Excess Policies provides that Lexington will pay only that portion of the "loss," as defined in the policies, for which an insured becomes legally obligated to pay as compensatory damages due to the exhaustion of all applicable underlying limits subject to the terms of the applicable underlying Chartis Umbrella Policy except as otherwise provided in each of the Lexington Excess Policies.

42. Coverage is not available under the Lexington Excess Policies to the extent that these policies follow form to the respective Chartis Umbrella Policies and coverage is not provided, limited or excluded under those umbrella policies.

43. Coverage is barred under each of the Lexington Excess Policies for any injury arising out of actual or threatened discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, pollutants or contaminants into or upon the land, the atmosphere or any course or body of water.

**Chartis Primary Policy**

44. Chartis issued to a predecessor in interest to WCI the Commercial General Liability policy no. RMGGL 159-57-59, effective December 10, 2007, to December 31, 2010 (the Chartis Primary Policy). A copy of the policy is attached as Exhibit G.

45. To the extent that the Trustee seeks coverage under the Chartis Primary Policy for defective drywall claims processed by the Trust, coverage under the policy may be available with respect to the claims only if the Trustee or the Trust is entitled to seek coverage, all conditions for coverage are satisfied, and coverage is not otherwise excluded.

46. Coverage is barred under the Chartis Primary Policy for any liability with respect to allegedly defective drywall arising from the actual, alleged or threatened



HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 Sheridan Street, Suite 104, Cooper City, FL 33026, Tel. 954/624-8700 Fax 954/624-8064

discharge, dispersal, seepage, migration, release or escape of "pollutants," as that term is defined in the policy.

47. Coverage is not available under the Chartis Primary Policy to the extent that a claimant seeks relief from an insured that does not constitute "damages" as that term is used in a policy. Equitable relief involving medical monitoring or economic losses associated with defective drywall do not constitute damages for which coverage is potentially available.

48. Coverage is barred under the Chartis Primary Policy to the extent that an insured has not suffered damages because of "bodily injury" or "property damage," as those terms are defined in the policy. The mere presence of defective drywall is not property damage and there is no coverage under the Chartis Primary Policy for any costs arising out of the process of repairing or replacing the drywall.

49. Coverage is barred under the Chartis Primary Policy to the extent that any bodily injury or property damage associated with defective drywall is not the result of an "occurrence," as that term is defined in each policy.

50. Coverage is limited under the Chartis Primary Policy to the extent that any bodily injury or property damage constitutes a single occurrence.

51. Coverage may be available under the Chartis Primary Policy only for damages because of bodily injury or property damage, if any, arising from defective drywall that occurs after the retroactive date but before the end of the policy period.

52. Coverage may be available under the Chartis Primary Policy for a claim for damages because of bodily injury or property damage first made against an insured during the policy period or any applicable extended reporting period.



HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 Sheridan Street, Suite 104, Cooper City, FL 33026, Tel. 954/624-8700 Fax 954/624-8064

53. Coverage is barred under the Chartis Primary Policy for property damage arising from defective drywall, if any, to property that an insured owns, rents or occupies.

54. Coverage is barred under the Chartis Primary Policy for bodily injury or property damage, if any, arising from defective drywall for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement, except as provided in the policy.

55. The obligation of Chartis to pay under the Chartis Primary Policy is limited to the cash security paid to fund the Combined Policy Aggregate Limit, as that term is used in the policy.

56. Coverage may be available under the Chartis Primary Policy only to the extent that "loss," as that term is defined in the policy, exceeds the total of the limits of insurance and all applicable deductibles and self-insured retentions under any other insurance that applies to the loss resulting from an occurrence.

**Chartis Communication with Defendants**

57. A predecessor in interest to WCI provided notice to Chartis under the Chartis Umbrella Policies and to Lexington under the Lexington Excess Policies for claims or damages arising from allegedly defective drywall installed in homes located in Florida. Chartis and Lexington acknowledged receipt of the notice and requested additional information. None of the information requested has been provided to Chartis or Lexington.

58. Chartis issued reservation of rights letters to the Trustee advising him that Chartis reserves its rights to decline coverage under the Chartis Umbrella Policies and the Chartis Primary Policy with respect to the defective drywall claims. Each letter refers to


HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 Sheridan Street, Suite 104, Cooper City, FL 33026, Tel. 954/624-8700 Fax 954/624-8064

the policy terms on which Chartis may rely to decline coverage, including the terms noted above.

59. Lexington issued reservation of rights letters to the Trustee advising him that Lexington reserves its rights to decline coverage under the Lexington Excess Policies. The letter refers to the policy terms on which Lexington may rely to decline coverage, including the terms noted above.

**COUNT I**
**DECLARATORY RELIEF**

60. Chartis and Lexington incorporate the allegations set forth in paragraphs 1-59.

61. A controversy exists regarding the obligation of Chartis and Lexington to defend and indemnify the Trustee and Trust under the Chartis Excess Policies, the Chartis Primary Policy and the Lexington Excess Policies with respect to claims arising from allegedly defective drywall installed in residential construction located in the State of Florida.

62. The interpretation of the applicable terms of each policy at issue is governed by Florida law.

63. Coverage is limited or eliminated by terms of each policy at issue, for the alleged damages for which the Trustee and Trust has or will seek coverage under each policy at issue.

**WHEREFORE**, Chartis and Lexington request the following declaratory relief:

1. A judgment in favor of Chartis declaring that it has no duty under the Chartis Umbrella Policies or the Chartis Primary Policy to defend or indemnify the Trustee or the Trust with respect to any claims or damages arising from allegedly


HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 Sheridan Street, Suite 104, Cooper City, FL 33026, Tel. 954/624-8700 Fax 954/624-8064

defective drywall installed in homes developed, constructed or sold in Florida by one or more of the Debtors;

2. A judgment in favor of Lexington declaring that it has no duty under the Lexington Excess Policies to defend or indemnify the Trustee or the Trust with respect to any claims or damages arising from allegedly defective drywall installed in homes developed, constructed or sold in Florida by one or more Debtors; and

3. Such other relief as the Court may deem just and proper.

Respectfully submitted,

Cindy L. Ebenfeld, Esq.
Ellen Novoseletsky, Esq.
Hicks, Porter, Ebenfeld & Stein, P.A.
11011 Sheridan Street, Suite 104
Cooper City, FL 33026
Tel: (954) 624-8700
Fax: (954) 624-8064

*Co-Counsel*

Warren Lutz, Esq.
Paul D. Smolinsky, Esq.
Jackson & Campbell, P.C.
1120 Twentieth Street, N.W.
Suite 300
Washington, DC 20036
Tel: (202) 457-1600
Fax: (202) 457-1678

*Counsel for Chartis Specialty Insurance Company and Lexington Insurance Company*

1260810v.3