# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| CHARTIS SPECIALTY INSURANCE COMPANY f/k/a AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, an Illinois corporation, and LEXINGTON INSURANCE COMPANY, a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT C. PATE, in his capacity as Trustee for the Chinese Drywall Trust, WCI COMMUNITIES, INC., a Delaware corporation, and WCI COMMUNITIES, L.L.C., a Delaware limited liability company,<br><br>Defendants. | CASE NO.: 8:10-CV-1465-T-23EAJ<br><br>Request for Oral Argument (30 mins) |

**DEFENDANTS' JOINT MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY THE ACTION OR TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA <u>AND SUPPORTING MEMORANDUM OF LAW</u>[1]**

Defendants, Robert C. Pate, as Trustee for the Chinese Drywall Trust (the "Trust") and WCI Communities, Inc. and WCI Communities, LLC (collectively, "WCI"), hereby move this Court to dismiss this action or, in the alternative, to stay or transfer it to the United States District Court for the Eastern District of Louisiana, where a first-filed action – which is a more comprehensive action involving a greater

---

[1] Defendants have filed simultaneous with this brief a motion to dismiss based on lack of subject matter jurisdiction.

NYDOCS1-949977.5

- 1 -

number of parties and a greater number of causes of actions – related to the same issues is pending.

## **MEMORANDUM OF LAW**

### PRELIMINARY STATEMENT

The Court should recognize this lawsuit for what it is: a flagrant and belated attempt at forum shopping by Plaintiffs Chartis Specialty Insurance Company f/k/a American International Specialty Lines Company ("Chartis") and Lexington Insurance Company's ("Lexington") (collectively, "Chartis/Lexington"). In December of 2009, Pate, in his capacity as Trustee, filed a lawsuit against Chartis, Lexington, and fourteen other insurance companies in the United States District Court for the Eastern District of Louisiana (the "Louisiana Action"). The Louisiana Action forms part of the Chinese Manufactured Drywall Products Liability Multidistrict Litigation (the "MDL"), and seeks declaratory relief concerning, among other issues, Chartis/Lexington's obligations under seven insurance policies for claims arising from defective Chinese manufactured drywall. The Louisiana Action also includes claims for breach of contract and tortious interference with contract against Chartis Claims, Inc., Lexington's claims administrator.

Preferring Florida as a venue, Chartis/Lexington filed this action against the Trust approximately six months later (the "Florida Action"). Like the Louisiana Action, the Florida Action requests declaratory relief concerning Chartis/Lexington's obligations under their seven insurance policies for claims arising from defective Chinese manufactured drywall. The Louisiana Action, however, is the more

comprehensive of the two actions, naming eighteen other insurance company defendants in the First Amended Complaint, and asserting breach of contract and tortious interference with contract causes of action.

Pursuant to the "first-filed rule," this Court should dismiss the Florida Action, or in the alternative, stay the action or transfer it to the United States District Court for the Eastern District of Louisiana. The issues that Chartis/Lexington place before the Court in the Florida Action should be decided only once in the Louisiana Action, which is the more comprehensive of the two actions. Furthermore, maintenance of the Florida Action will result in piecemeal adjudication, duplicative discovery, inefficient use of the judicial system, and potentially inconsistent results, all of which the Louisiana Action, as part of the MDL, seeks to avoid.

## FACTS

### I. THE UNDERLYING CLAIMS AND FORMATION OF THE TRUST

WCI Communities, Inc. and certain of its subsidiaries (collectively, "WCI") contract to build and sell homes and residential communities in several states. LA Compl. ¶ 25.[2] In 2006, WCI began receiving complaints of property damage and/or bodily injury, alleging that the Chinese Drywall[3] installed in homes that WCI sold was causing increased rates of corrosion and tarnishing of soft metal and silver materials

---

[2] "LA Compl. ¶ __" denotes citations to Plaintiff's First Amended Complaint in the Louisiana Action.

[3] As used herein, the term "Chinese Drywall" includes drywall manufactured in China as well as drywall manufactured domestically that contains recycled drywall from China.

throughout the houses, as well as causing various health-related issues. LA Compl. ¶¶ 27, 29/FL Compl. ¶¶ 14, 21-23.[4]

On August 4, 2008 and July 1, 2009, WCI filed for bankruptcy, eventually filing a Second Amended Joint Chapter 11 Plan of Reorganization on July 16, 2009 (the "Plan"). LA Compl. ¶¶ 30-31/FL Compl. ¶¶ 13, 15. The Plan created the Trust to assume WCI's liability and losses for claims asserted against it by owners, occupants, or persons otherwise exposed to homes built by WCI for damages related to Chinese Drywall. LA Compl. ¶ 32/FL Compl. ¶ 18. On the Plan's effective date, WCI transferred to the Trust its right, title, and interest in the "Insurance Coverage Actions"[5] and the "Chinese Drywall Actions"[6] and the proceeds thereof, and any right, title or interest in pursuing and receiving any and all "Insurance Recoveries."[7] LA Compl. ¶ 33.

---

[4] "FL Compl. ¶ __" denotes citations to Chartis/Lexington's Complaint in the Florida Action.

[5] The Plan defines "Insurance Coverage Actions" as "any rights to indemnification, reimbursement, contribution or other payment under any of the [WCI] Debtors' existing insurance policies, including the [WCI] Debtors' director and officer liability insurance policies, as of the Effective Date that may provide coverage with respect to Allowed Chinese Drywall Claims."

[6] The Plan defines "Chinese Drywall Actions" as "the Causes of Action that the [WCI] Debtors may have against any subcontractor or other Person who installed Chinese drywall in a home built or sold by a [WCI] Debtor, directly or indirectly, any insurer of any such subcontractor or other Person, any retailer, wholesaler, distributor, manufacturer or provider of Chinese drywall that was installed in a home built or sold by a [WCI] Debtor, directly or indirectly, and/or any insurer of any such retailer, wholesaler, distributor, manufacturer or provider."

[7] The Plan defines "Insurance Recovery," in pertinent part, as "(a) the right to pursue and receive the benefits and proceeds of any insurance policy issued to, owned by, or otherwise providing coverage to any [WCI] Debtor, including any insurance policy owned by any third party on which any [WCI] Debtor is named as an additional insured, with respect to Chinese Drywall Claims; (b) the right to pursue and receive recovery from or as a result of any

On August 26, 2009, the United States Bankruptcy Court for the District of Delaware confirmed the Plan and approved Pate as the Trustee, tasked with prosecuting the Insurance Coverage and Chinese Drywall Actions.  LA Compl. ¶¶ 34-35/FL Compl. ¶ 16.

## II.     THE FIRST-FILED LOUISIANA ACTION

On December 23, 2009, Pate, as Trustee of the Trust, filed the Louisiana Action in United States District Court for the Eastern District of Louisiana against Chartis and Lexington, as well as American Guarantee and Liability Insurance Company, Amerisure Insurance Company, Amerisure Mutual Insurance Company, Auto-Owners Insurance Company, FCCI Commercial Insurance Company, FCCI Insurance Company, Hermitage Insurance Company, Illinois Union Insurance Company, Landmark American Insurance Company, Mid-Continent Casualty Company, National Union Fire Insurance Company of Pittsburgh, PA, Old Republic Insurance Company, Scottsdale Insurance Company, and Steadfast Insurance Company.  The Complaint was amended on March 15, 2010 to add five more insurance companies:  Hartford Accident & Indemnity Company, NGM Insurance

---

Insurance Coverage Action; ... [and] (e) the right to pursue and receive any other recovery from an insurance company, in its capacity as such, with respect to Chinese Drywall Claims."

Company, Ohio Casualty Company, Owners Insurance Company,[8] and West American Insurance Company.[9] See First Am. Compl., attached as Ex. A.

The Louisiana Action seeks a declaratory judgment that the insurance companies are obligated to indemnify the Trust in connection with claims arising from the development and sale of homes allegedly containing defective Chinese manufactured drywall (the "Underlying Claims"). The insurance policies at issue in the Louisiana Action include one Chartis Primary Policy, three Chartis Umbrella Policies, and three Lexington Excess Policies (collectively, the "Chartis/Lexington Insurance Policies"). The First Amended Complaint also contains a claim for breach of contract, on account of the insurance companies' failure to acknowledge coverage for the Underlying Claims, and a claim for tortious interference against Chartis Claims, Inc., for inducing or causing breach of certain insurance policies sold by Lexington.

As of the date of the filing of this motion, nineteen insurance company defendants have filed responsive pleadings. On August 4, 2010, Judge Fallon issued an order requiring responses to written discovery by August 16, 2010, and scheduling hearings on motions to compel and motions to dismiss in September and November of 2010, respectively.

---

[8] In the First Amended Complaint, Owners Insurance Company was substituted for Auto-Owners Insurance Company.

[9] The Trust and Old Republic Insurance Company ("Old Republic") have since settled and Old Republic has been dismissed from the case.

### III. CHARTIS/LEXINGTON'S SECOND-FILED FLORIDA ACTION

Six months after Pate filed the Louisiana Action, Chartis/Lexington filed this duplicative action on June 29, 2010. Like the Louisiana Action, the Florida Action seeks declaratory relief concerning Chartis/Lexington's contractual duties to the Trust under the Chartis/Lexington Insurance Policies for the Underlying Claims. FL Compl. ¶ 1 (seeking "a declaration that they owe no duty to defend or indemnify … under liability insurance policies issued by each of them"). The Florida Action also requests declarations concerning its obligations to WCI under the Chartis/Lexington Insurance Policies. FL Compl. ¶¶ 7-8, 20. As of the date of this motion, no action aside from service of process and the filing of certificates of interested persons and notices of pendency has taken place in the Florida Action.

ARGUMENT

### I. UNDER THE FIRST-FILED RULE, THE COURT SHOULD DISMISS, OR IN THE ALTERNATIVE, STAY OR TRANSFER THE FLORIDA ACTION TO THE EASTERN DISTRICT OF LOUISIANA WHERE THE FIRST-FILED LOUISIANA ACTION IS PENDING

"[W]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005); *see also Global Innovation Tech. Holdings, LLC v. Acer Am. Corp.*, 634 F. Supp. 2d 1346, 1348 (S.D. Fla. 2009) (noting that case law in both the Fifth Circuit and Eleventh Circuit strongly favors the forum of the first-filed case). Indeed, "it is a general rule that a district court may dismiss, transfer, or stay an action so that the issues presented can be resolved first

in the earlier filed action pending in another district court." *Pollution Prevention Servs., Inc. v. Inter Recycling, Inc.*, No. 96-54-CIV-T-17A, 1996 WL 378990, at *7 (M.D. Fla. July 1, 1996) (internal quotations and brackets omitted).

The first-filed rule "is consistent with the doctrine of federal comity which requires the federal district courts to refrain from interfering with each others' affairs in order to avoid duplication of judicial resources and conflicting decisions." *Allstate Ins. Co. v. Clohessy*, 9 F. Supp. 2d 1314, 1316 (M.D. Fla. 1998). The first-filed rule also aims to avoid "piecemeal resolution of disputes" and multiple actions. *Groom v. Bank of Am.*, No. 8:08-cv-2567-T-27EAJ, 2010 WL 627564, at *9 (M.D. Fla. Feb 23, 2010); *Pollution Prevention Servs., Inc.*, 1996 WL 378990, at *7.

### A. The First-Filed Rule Applies Here Because The Louisiana And Florida Actions Substantially Overlap

In this case, the first-filed rule applies because the Louisiana and Florida Actions involve overlapping parties, issues, and claims. "The first-filed rule considers (1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues." *Groom*, 2010 WL 627564, at *9. The first-filed rule does not require identical lawsuits; rather, it applies "where two actions involve overlapping issues and parties." *Global Innovation*, 634 F. Supp. 2d at 1347; *Groom*, 2010 WL 627564, at *3, 9. *See, e.g., Global Innovation*, 634 F. Supp. 2d at 1347 (applying first-filed rule where first action involved twenty-one different defendants and one less plaintiff than the second-filed action); *Groom*, 2010 WL 627564, at *3, 9 (applying the first-filed rule where eleven plaintiffs in first-filed action

also constituted plaintiffs in the second-filed action which involved 118 plaintiffs in total, and the two actions involved some of the same defendants and claims).

Here, the Louisiana and the Florida Actions substantially overlap. Both actions involve overlapping parties: Pate, as Trustee, and Chartis and Lexington, as the vendors of the insurance policies at issue. The presence of the other insurance company defendants in the Louisiana Action and WCI in the Florida Action does not militate against application of the first-filed rule because the parties need not be identical for the rule to apply. *See, e.g., Global Innovation*, 634 F. Supp. 2d at 1347; *Groom*, 2010 WL 627564, at *3, 9.

Furthermore, the Louisiana and Florida Actions involve overlapping factual and legal issues. Both the Louisiana and Florida Actions will require factual determinations concerning the supply, installation, and effects of Chinese manufactured drywall at overlapping locations. Additionally, both actions will require an interpretation of the Chartis/Lexington Insurance Policies.

That the Florida Action requests a determination as to WCI's rights under the Chartis/Lexington Insurance Policies and that the Louisiana Action requires interpretation of additional insurance policies does not militate against application of the first-filed rule. The rule does not require identical issues, but, rather, a substantial overlap of issues. Moreover, the interpretation of additional insurance policies in the Louisiana Action – sold by different insurance companies – will encourage uniformity of policy interpretation and efficiency since the Chartis/Lexingon Insurance Policies and the other insurance policies at issue in the

Louisiana Action likely contain similar terms, and the insurance companies will likely raise similar defenses.

Additionally, the Louisiana and the Florida Actions involve overlapping claims. Both actions include a declaratory judgment count, requesting an interpretation of Chartis/Lexington's obligations under their policies. The Louisiana Action's additional causes of action for breach of contract and tortious interference with contract do not change the overlapping nature of the two actions, but do support resolution of the insurance coverage issues in the Louisiana Action, which is the more comprehensive action.

Finally, the overlapping declaratory judgment claims are best decided in the Louisiana Action because evidence presented in connection with one cause of action will aid in resolution of other causes of action. For instance, a declaration of Chartis's or Lexington's obligations under their insurance policies will necessarily determine whether either of them breached the policies by failing to provide coverage. Since the Louisiana and Florida Actions substantially overlap in their parties, issues, and claims, this Court should apply the first-filed rule and dismiss, or in the alternative, stay or transfer the Florida Action.

### B.   No Compelling Circumstances Warrant Departure From The First-Filed Rule

In this case, no compelling circumstances exist to trump the first-filed rule. A party objecting to jurisdiction in the first-filed forum carries "the burden of proving compelling circumstances to warrant an exception to the first-filed rule." *Manuel*, 430 F.3d at 1135 (*citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675

F.2d 1169, 1174 (11th Cir. 1982)). Such compelling circumstances may exist where (1) special circumstances, such as anticipatory litigation or forum shopping, give priority to the second-filed action under equitable considerations, or (2) the balance of convenience strongly weighs in favor of the second-filed forum. *See Jasper Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 98-2532-CIV-T-17E, 1999 WL 781808, at *5 (M.D. Fla. Sept. 3, 1999); *id.* at 1135-37. "[E]ven where compelling circumstances are present, [however,] a court is not required to abandon the first-filed rule." *Vital Pharms., Inc., v. Cytosport, Inc.*, C.A. No. 08-61753-CIV, 2009 WL 302277, at *4 (S.D. Fla. Feb. 9, 2009). "The matter remains one of discretion for the trial court." *Id.*

### 1. No Special Circumstances Give The Florida Action Priority Over The First-Filed Louisiana Action

The Louisiana Action constitutes neither anticipatory litigation nor forum shopping. No evidence exists that the Louisiana Action is a preemptive lawsuit. The insurance company defendants and the Trust were not engaged in any pre-litigation settlement discussions, and neither Chartis, nor Lexington, nor any other insurance company suggested to the Trust that it was planning to file a lawsuit for a declaration of its rights under the insurance policies. Moreover, the nature of the Louisiana Action belies any notion that it constitutes a preemptive lawsuit. Anticipatory lawsuits are typically vehicles used by "true defendants" to file declaratory judgment actions and deprive the "true plaintiff" of his choice of forum. *See, e.g., Vital Pharms., Inc.*, at *5 (where recipient of cease and desist letter filed preemptive declaratory judgment action). Here, the Trust - and not the defendant insurance

companies - constitutes the true plaintiff since the Trust asserts breach of contract and tortious interference counts in addition to a declaratory judgment claim. Finally, no facts suggest that the Trust was forum shopping when it chose to file in the Eastern District of Louisiana. The Eastern District of Louisiana was a natural choice given the pendency of the MDL, in which numerous other lawsuits concerning Chinese Drywall are concentrated. For the aforementioned reasons, no special circumstances trump the first-filed rule.

2. <u>The Balance Of Convenience Weighs In Favor Of The Eastern District of Louisiana</u>

When deciding whether a second-filed action should proceed instead of the first-filed action, courts apply essentially the same convenience factors as when deciding to transfer an action under 28 U.S.C. § 1404(a). *Manuel*, 430 F.3d at 1135. At this stage of the proceedings, the most relevant public and private-interest convenience factors for consideration consist of: (1) weight accorded to plaintiff's choice of forum; (2) the convenience of the parties; and most importantly, (3) trial efficiency and the interests of justice.[10]

        a) *Chartis/Lexington's Choice Of Forum Deserves Little Weight In Light Of Pate's First-Filed Louisiana Action*

The Trust's, and not Chartis/Lexington's, choice of forum is entitled to deference in this matter. A plaintiff's choice of forum is entitled to less than normal

---

[10] The other § 1404 factors include: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the locus of operative facts; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the relative means of the parties; and (6) a forum's familiarity with the governing law. *See Manuel*, 430 F.3d at 1135 n.1.

NYDOCS1-949977.5

deference when related proceedings are pending in the transferee district. *SOC-USA, LLC v. Office Depot, Inc.*, No. 09-80545, 2009 WL 2365863, at *3 (S.D. Fla. July 30, 2009). Indeed, one Florida federal district court has stated:

> [u]ndoubtedly the most compelling reason for transfer of the instant case is that there are ongoing related proceedings pending in the Northern District of Illinois in which the parties have invested substantial time, energy, and resources. Because this action and the Illinois action involve substantial overlapping of factual and legal issues … the Court concludes that Plaintiff's choice of forum is entitled to less than normal deference.

*Id.*; *Breckenridge Pharm., Inc. v. KV Pharm. Co.*, No. 08-80963, 2009 WL 1404698, at *4 (S.D. Fla. May 19, 2009) (stating that "plaintiff's choice of forum is not a more important factor than the presence of related proceedings in the transferee district"). Here, the presence of related proceedings in the MDL weigh heavily in support of transferring the Florida Action to the Eastern District of Louisiana and outweigh any deference to Chartis/Lexington's choice of forum in the Florida Action.

        b)     *The Trust's First-Filed Louisiana Action Serves The Convenience Of All Parties*

The United States District Court for the Eastern District of Louisiana is equally convenient for the parties. First, the Eastern District of Louisiana is convenient for the Trust in that Pate, a citizen of Texas, filed in the same circuit as his home state, and "when a plaintiff chooses [his] own forum, it is normally reasonable to assume that the choice is convenient." *Tempco Elec. Heater Corp. v. Omega Eng., Inc.*, 819 F.2d 746, 749 (7th Cir. 1987). The Eastern District of Louisiana is convenient for Chartis/Lexington as they are already party to *Amato v. Liberty Mutual Ins. Co.*, C.A.

No. 2:10-cv-932-EEF-JWC (E.D. La.), an MDL member case, in addition to the Louisiana Action.  Furthermore, Chartis and Lexington are Illinois and Delaware corporations with principal places of business in New York and Boston, respectively.  Therefore, Florida presents no more convenient a forum for Chartis, Lexington, and their witnesses than does Louisiana.  Second, all of the insurance companies will save considerable amounts in attorneys' fees and costs by sharing the burden of litigation with each other, since they will likely assert similar defenses.[11]  Finally, the convenience of the parties supports litigation of this dispute in the Eastern District of Louisiana because the Louisiana Action has been proceeding for eight months, and is further along than the Florida Action, which was filed less than two months ago.

        c)    *Trial Efficiency And The Interest Of Justice Mandate That The Florida Action Be Dismissed, Or In The Alternative, Stayed Or Transferred To The Eastern District Of Louisiana*

Trial efficiency mandates the dismissal, or in the alternative, stay or transfer of the Florida Action to the Eastern District of Louisiana.  The MDL is particularly well-suited for resolution of the dispute between Chartis/Lexington and the Trust.  Judge Fallon, the MDL's presiding judge, already has familiarity with the facts and legal issues attendant to Chinese Drywall litigation, including the coverage issues presented here.  Indeed, Judge Fallon stated:

> There's also some matters that I mentioned the last time with the insurance companies, the issue of whether or not they should be transferred to the MDL and consolidated with this case or whether they

---

[11] Notably, many of the defendants in the Louisiana Action have joined in each other's motions to dismiss, demonstrating that the insurance companies share the same defenses.

>should go forward in separate, independent jurisdictions. I studied the matter a little more closely, and I find that a lot of the policy defenses that are being urged really have to do with the type of issues that I'll be dealing with in the MDL; that is to say, a defense might be contesting contamination or contesting the type of material that was being used and whether or not that's accepted or excluded by the policy. Rather than have discovery in the various districts of the country on the same issues – the whole purpose of the MDL is to prevent that – those insurance issues, since they deal with the same facts that I will be dealing with in the MDL, it looks like … those cases are better and more efficiently dealt with if they are transferred to the MDL. Hopefully, that will be done.

*In re: Chinese Manufactured Drywall Products Liability Litigation*, MDL 2047, Hearing Transcript at 15 (E.D. La. Jan. 14, 2010). Indeed, the JPML has recognized that coverage disputes involving Chinese Drywall will be dealt with more efficiently in the MDL, and has responded by transferring more coverage cases to Louisiana.[12]

As mentioned above, it is likely that Chartis, Lexington, and the other insurance companies will rely on the same or similar arguments and exclusions in defending the Louisiana Action. The goal of efficient utilization of judicial resources – as well as an interest in consistent results – suggests that one decisionmaker in one forum should resolve these legal issues. The MDL provides a forum to efficiently determine these legal issues, as well as underlying factual issues such as the scope and cost of remediation. In fact, the MDL will provide a single forum for countless pretrial discovery matters, including issues regarding expert reports and

---

[12] *See e.g., Owners Ins. Co., et al. v. The Mitchell Co. Inc.*, C.A. No. 5:09-374; *Amato v. Liberty Mut. Ins. Co.*, C.A. No. 10-932. Moreover, other insurance coverage actions recently filed in the United States District Court for the Eastern District of Louisiana and made part of the MDL include *Canty v. Allstate Ins. Co.*, C.A. No. 10-929; *Vu v. Progressive Advanced Ins. Co.*, C.A. No. 10-930; *Cassagne v. Republic Underwriters Ins. Co.*, C.A. No. 10-928; and *Gross v. State Farm Fire and Cas. Co.*, C.A. No. 10-931.

testimony of the process through which defective Chinese Drywall allegedly has caused damages.

The interest of justice also mandates the dismissal, or in the alternative, stay or transfer of the Florida Action to the Eastern District of Louisiana.  Allowing the Florida Action to proceed will undo the progress that has taken place over the last eight months in the Louisiana Action, resulting in an unnecessary waste of judicial resources, time, and expenses by all parties.  In contrast, nothing has happened yet in the Florida Action.

Indeed, an almost identical situation occurred in *Northfield Insurance Co. v. North American Catastrophe Services, Inc.*, No. 6:09-cv-1560-Orl-28GJK, 2009 WL 3710689 (M.D. Fla. Nov. 5, 2009).  In *Northfield*, the policyholder filed in the Eastern District of Louisiana seeking declaration of its insurance company's obligations to defend or indemnify it under the policy for underlying claims of damages due to formaldehyde exposure.  *Id.* at *1.  Three months later, after the insurance company already made a motion to change venue in Louisiana, it filed in this Court, resulting in "two suits pending involving [the] parties and seeking the same clarification of [the insurance company's] obligations."  *Id.*  This Court transferred the insurance company's declaratory action to the first-filed Eastern District of Louisiana, to be consolidated with the policyholder's action, and with the Multidistrict Litigation that was pending there.  *Id.*

Proceeding with the Florida Action will result in different or duplicative pretrial procedures, and waste the resources of the parties and the judiciary over the same

issues that already are pending, and have been pending for eight months, in the Louisiana Action.  Moreover, it would inevitably lead to piecemeal resolution of the issues, as any determination would be binding only upon Chartis and Lexington.  If the Florida Action were permitted to proceed, only some of the parties and some of the causes of action would be involved.  No matter what the resolution of the Florida action, the Louisiana Action would proceed to resolution regarding the additional parties and the additional causes of action, even against both Chartis and Lexington.

This scenario would result in piecemeal litigation and a waste of judicial resources.  In the alternative, transfer to the first-filed forum and the MDL would conserve judicial resources and preclude the possibility of conflicting judgments.  Since the Louisiana Action, which is the natural plaintiff's choice of forum and the most convenient forum for all parties, would lead to a uniform process and result regarding the defendant insurance companies' obligations under their respective policies, the balance of convenience greatly weighs in favor of litigating this action in Louisiana.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request this Court to dismiss, or in the alternative, stay or transfer this action to the United States District Court for the Eastern District of Louisiana.

CERTIFICATION PURSUANT TO LOCAL RULE 3.01(G)

Defendants certify that pursuant to Local Rule 3.01(g), they conferred with counsel for Chartis/Lexington, but counsel for all parties were unable to agree on a resolution of this motion.

Dated:     August 12, 2010

| /s/ Robert L. Rocke | /s/ Anna M. Piazza |
|---|---|
| Robert L. Rocke, Esq. | Robert M. Horkovich, Esq. |
| Jamie Prockop, Esq. | Anna M. Piazza, Esq. |
| Rocke, McLean & Sbar, P.A. | Anderson Kill & Olick, P.C. |
| 2309 S. MacDill Avenue | 1251 Avenue of the Americas |
| Tampa, FL  33629 | New York, NY  10020 |
| T:  813-769-5600 | T:  212-278-1000 |
| F:  813-769-5601 | F:  212-278-1733 |
| rrocke@rmslegal.com | rhorkovich@andersonkill.com |
| jprockop@rmslegal.com | apiazza@andersonkill.com |
| *Trial counsel for Defendant WCI Communities, Inc. and WCI Communities, LLC* | *Trial counsel for Defendant Robert C. Pate, as Trustee for the Chinese Drywall Trust* |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2010, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.

      /s/ Robert L. Rocke
      Robert L. Rocke